The last case this morning is DKR Consulting v. Shopify, 2024-22-79. Good morning, Counsel. Mr. Springer. Good morning, Your Honor. Good morning, Your Honor. May it please the Court? The District Court's 101 order dismissing these claims of Rule 12 was improper and should be reversed here on DeNova Review. The Court ignored the Clear and Convincing Evidence Standard, it ignored the Rule 12 Standard, and its 101 analysis was entirely improper. The claims here are not directed to abstract ideas. If we look at Claim 1 of the 785 patent, for example, which is on APPX 47, the Claim 1 specifically claims an embeddable buy button builder that not only executes on a first server, but also generates an embeddable buy button with a specific configuration, one that displays a hyperlink and a representation of an item that was selected from a digital inventory to be listed for sale. It also claims embedding the buy button into a website that is specifically executed by a different server, not operated by the buy button provider. In our brief, we nicknamed this feature as the embedding element. If we look at also Claim 1 of the 995 patent, Your Honor, which is on page 77 of the appendix, that patent claim describes a widget builder that executes on an application server and generates a buy button widget within a product listing and also includes the product image and metadata that's received from another source. This is the widget builder, as we described in our brief. Going back to Claim 1 of the 785 patent, Your Honor, page 47 again of the appendix, that claim also describes displaying an e-commerce store within the website where the buy button is embedded, which is, again, executed by a separate server than the embeddable buy button itself. This is the store display element that we described in our brief. All three of these patents describe all three of these features. They claim all three of these features in one way or another. The claim language here, Your Honor, is not merely functional. It's not results-oriented because the claims here as a whole articulate a specific method for embedding a buy button for an e-commerce store using the claimed features that I just described in the patent. They claim a specific system or architecture for generating an e-commerce store using those claimed features. It's important here as well, Your Honor, on the results-oriented question to look at the exact technical problem that's articulated in the patent as being solved by these claims. Can I just ask you, so you make some use of the DDR case, not surprisingly. So why is there enough specificity of means here that brings this into the same, puts this on the same side of the step two line that the court found the claim in DDR was? Sure. It's particularly relevant here, Your Honor, again, to consider the exact problem that's being solved by the patents itself. That, I believe, is relevant to the functional and results-oriented question. So again, the 785 patent on page 39 of the appendix, column 1, 57 through column 2, line 17, it describes the technical problem. I'm sorry, would you just say the columns and line numbers again? Sure, no problem. Column 1, line 57 through column 2, line 17. Of the 785. 785. This is page 39 of the appendix. So it describes that the technical problem addressed by the patents is the limitations of conventional web widgets at that time. Those web widgets lacked the inventive features of the DKR patents and thus made them incapable of being used as self-contained e-commerce platforms. We noted this as well in the underlying district court case in our opposition brief. That's page 295 of the appendix. So, again, in other words... Maybe I missed it. I didn't hear anything that I would call specific in what you just said. This is the problem. I was articulating the technical problem that's being stated in the patent. So I am getting there, Your Honor. I'll get there. But in other words, conventional web widgets did not enable an e-commerce platform that was self-contained from the host website to be opened and accessed while the customer remained on the host website. That's the technical problem that's being addressed by the patents. So the point here is these specific technical features and, again, the specific method for embedding a buy button and the specific system or architecture that generates the e-commerce store, that's what the claims as a whole are directed to. And they rely on these specific claim features that I mentioned earlier, the embedding element, the widget builder and the store display element to solve that problem of enabling a widget to be used as a self-contained e-commerce platform. So the spec describes these features as technical and unconventional improvements to web widgets. As a catch-all, for example, I'm looking at column 18 of the 75 patent, lines 16 through 18, which is page 47 of the appendix. That states that each of the foregoing embodiments illustrate how a portable web widget enables commerce through an embedded e-commerce store. So again, obviously for Alice, we have to start with what the claims are talking about, but we also have to keep in mind what the exact technical problem that the claims are directed to as the patent articulates. So again, there's lots of explanation, additional explanation about the technical features in the claims in the specification and it describes how they solve that technical problem. Your Honor mentioned DDR. Case law as well demonstrates that the claim is valid here at step one. As this court found in DDR, that those claims address the problem of, quote, retaining website visitors that if adhering to the routine conventional functioning of from a host website after clicking on an advertisement and activating a hyperlink. This court also specifically found that that problem was, quote, specifically arising in the realm of computer networks and that the claim solution was thus necessarily rooted in computer technology in order to overcome that problem. So in other words, if the problem is one that's rooted in computer technology, it makes sense that whatever solution to that problem would also be rooted in computer technology. And that is very important here, Your Honor, because it's the same exact problem that's addressed by the claims here in the DKR patents. But I want to be very clear, our point on DDR is not that any claim, no matter how it's worded, is non-abstract so long as it addresses a problem that arises in computer technology. That's not our point. Our point with DDR is that when it's considered, when it's applied to these claims, in view of the litany of other cases that have found eligibility of computer technologies at step one, it removes any doubt that these claims are actually eligible at step one because it's directed to the same exact technical problem as DDR. Uniloc in the Konin-Klicka case, excuse me. Call it Phillips. Uniloc in the Phillips case further supported this point. Uniloc reaffirmed the exact findings that this court made in the DDR case and also further concluded that, quote, claims that focus on specific assertive improvements in computer capabilities and are directed to improvements in the functionality of a network or platform are patent eligible at step one. And the Phillips case indicated that software inventions that make non-abstract improvements to existing technological processes in computer technology are eligible at step one. Again, there were web widgets at the time of the DKR patents, or the DKR invention. Web widgets existed. But they could not be used as a self-contained e-commerce platform because they did not have the specific claimed inventive features that the DKR patent claims have. Okay. Can I ask you this question? So I don't have the exact priority date of the DDR patent, but it must be considerably before the 2010 priority date of these patents, right? I believe so, Your Honor. They're 6 and 7 million numbers, so those are very old. Does it make any difference if this kind of screen-in-screen problem result in DDR was not conventional at the priority date for the DDR patents, but by 2010 maybe it is conventional and you therefore have to do something else? Not something different. Well, yeah, something else about that would be an inventive concept in producing that result of having a buy button that is inside a web page, and you don't lose the web page when you work the buy button. Sure. So I believe the question, Your Honor, is basically... What's conventional changes over time. What's conventional changes over time. I think that's a fair point, but the fact that one solution, meaning in the DDR case, did not... The fact that it solved the technical problem it described in a particular way doesn't mean that there cannot be another solution to the same technical problem. So DDR solution from... I can't remember what the priority date is. Either 99, I believe, the opposing counsel mentioned in their brief. That doesn't mean that that was the only way to solve that technical problem. The point here is that that same technical problem, maybe in a slight variance, still existed in 2010, and DKR invented another solution to a similar technical problem. And I think it's important here as well, Your Honor, to point out the opposing counsel at the district court hearing, they even acknowledged that the subject matter of these claims is patent eligible. I direct the court's attention to page 339 of the appendix, where opposing counsel, in response to a colloquy with the judge, said, Yes, very much, you could patent, for example, the computer functionality that allows you to create a buy button. That's right in our claims, Your Honor. The 785 patent, claim one, says, Generating by the first server the embeddable buy button. So it's clear, even to the opposing counsel, that these claims are not directed to an abstract idea. Enter your rebuttal. You can continue or save it. I just want to mention a few points really quickly, Your Honor. I think it's very important here. In view of the district court's extremely brief dismissal, they totally ignored the clear and convincing evidence standard. The word convincing is only mentioned in DKR's opposition brief. It's not mentioned in the court order. It wasn't even mentioned in Shopify's briefs. And that's clear when you look at the order, Your Honor. It presupposed Shopify's abstract idea instead of looking exactly at what the claims say. There's very little scant analysis of what the district court interpreted the actual claims as. And it also failed to draw the facts, which includes the statements and the patents themselves, in DKR's favor, which is required at the Rule 12 stage. So with that, Your Honor, I'll save the rest of my time. Fine. We will save it for you. Mr. Lantier. Good morning, Your Honors, and may it please the Court. Greg Lantier on behalf of Appelli Shopify. Your Honor, these are patents that state on their face that they are about enabling people to sell products using the Internet. They don't recite anything in the claims that improves the functioning of computers. They don't recite anything that improves or purports to improve the functioning of the Internet. These types of claims are at the heart of the Supreme Court's and this Court's long line of jurisprudence saying that you cannot obtain a patent on the idea of using the Internet to sell things or to market things. The specific improvement here is the use of Web widgets, which are admitted in the patent in columns one and two, to be a well-known technology that predates the patents in a way that the patents say they haven't been used before, and that is to sell product. The patents say that Web widgets have been used to provide weather information or sports scores or other things, but that they haven't been used to market things to the full degree that they could be. And so really the patents, to jump off of something that opposing counsel said, the patents don't state that there's a problem. The patents just state that there's an opportunity. What the patents state is that social media has come into the fore. People are using social media to do e-commerce to try to market products to others, but that really for viral distribution, e-mail has been the methodology that's been used. And the patents say there's an opportunity here. We already have these Web widgets. As the patent clearly states at column two, lines one and two, those Web widgets could already be embedded on virtually any website. And what we can do is use those Web widgets to list product information and include a buy button. So if somebody wants to purchase that product, they could press that link and up will come the credit card screen where they can enter their information, tell us how many of these things they want, and pay for those products. I'd like to address just a few points that were made during opposing counsel's presentation. What about the operate on a separate server piece of the claim? Yes, Your Honor, a few points on that. First, I think it's important to understand what the two servers are doing. It's only in the claims of the 785 patent. The two servers are not in the other two patents. But in the claims of the 785 patent, the thing that's identified as the first server is doing all the work of what the patents talk about. And it could be multiple servers itself because the figures of the patent show that. The second server is, for example, the New York Times server or the website server that's going to be the broader thing that the individual is reading when the pop-up comes from the first server. So I think that's important because, Your Honors, when you read these patents, there's no description whatsoever of anything about that second server as used in the claims, other than to say we already know that web widgets can be embedded on virtually any website. Describe that way, I think, at least makes me think, and other people do, of DDR, two separate back-end systems providing information on the same screen. And that one survived. I understand, I think, the connection you're drawing, Your Honor. I think there are a variety of clear distinctions from DDR. To address Your Honor's question, the DDR priority date was 1998. The priority date here is 2010. Obviously, in the e-commerce field, things that were arguably unconventional in 1998 were not still unconventional 12 years later. The DDR claims, while useful for e-commerce, were not directed to commercial activity. They were directed, and I should say that DDR is a Step 2 case. I think that opposing counsel was arguing it as Step 1. DDR didn't ultimately reach Step 1. It went to Step 2. And what it found was we have a particular limitation in the claim, this hybrid webpage limitation, and that inserting a server into the middle of a process that predated the patents, that is the process of clicking on a hyperlink and then being taken to somebody else's webpage, was unconventional because a person wouldn't have expected that if you clicked on a hyperlink, that's telling you it's going to take you to somebody else's webpage. That, in fact, there would be this other server sitting in the background that would create a completely new webpage that's different from the way that the Internet previously worked. So, in effect, what the court was saying is that the Internet conventionally worked in one way as a network, and there's a limitation in these claims in DDR that's unconventional in the way that the network works. There's nothing analogous in the claims of the DKR patents that when the DKR patents show you a buy button that says buy from Amazon, where you can use Amazon payments, it takes you right to Amazon's transaction processing page. That's in Figure 13 in the accompanying text. When the patents say, this is a web widget that you're receiving from the Acme company, that's where it's coming from. There's no thing here where you think you're going one place and you're going somewhere different. That's just not part of the claims in this patent. Does that address your question, Your Honor? I don't want to address a different question.  Okay. One thing that opposing counsel said, and I think it's an important distinction, is that he said that Your Honor should look to Appendix 39, column 1, lines 57 to column 2, line 17, to understand what the problem was here. I think he calls it a technical problem or the exact technical problem. And then he said that when you read that, you'll see that it states that web widgets were, quote, incapable of performing the functions that are described in the DKR patents. That's not what the patent says. The patent doesn't say that web widgets, as they existed, were incapable of doing anything. What it says, and this is at column 2, line 8, is that they were not being used for that purpose. So again, these patents are not about a problem that presented itself in a technical field. They are about what the inventors thought was an opportunity to use existing conventional technology in order to more effectively sell products on the Internet or using social media. There was a suggestion raised that when I argued this to the district court, I said that these patents are directed to a non-abstract idea, and the citation, I think, was to Appendix page 339. I did not say that, Your Honor. I would stand by the distinction I was making to the district court, which is that if these patents were about how to create a buy button technologically, and they said previously nobody could figure out how to create a link that would take you to a transaction processing screen, but we have technologically figured out how you can architect a system to do that, and they described that, and they claimed it, then that is patent eligible. You could get a patent on an improvement. That would be like DDR. You could get an improvement to the way that the Internet works as a network. You enabled something technically to happen that could not happen before. It is not what these claims are. These claims are purely functionally written using the familiar configured to type language to say use a server that is configured to do X, Y, and Z, and then it just spells out the functions, does not say anything about how to do any of those functions. And as the titles of the patents make clear, as the statement of the field of the invention makes clear, as the preambles and the remaining limitations of all the claims make clear, these claims are directed to the idea of providing an e-commerce store or a product listing that features a buy button that, when depressed, brings up a transaction processing screen so that the product can be purchased. They are no different in terms of the analysis than the claims that were invalidated in custom media, in Trinity information, or in free stream media, just to name a few of the cases that I think have very similar analyses to what we have here, particularly in regard to a patent owner asserting that something is nonconventional, but there being no support in the patent specification for that or, in fact, the patent specification refuting that. And I think that it is important here that the court recall that your case law makes clear that you do not need to credit an allegation that's made in a brief or in a complaint or elsewhere if it is not consistent with what's in the specification of the patents itself, or it's not consistent with what's in the claims of the patent itself. And when you look at this patent, this specification... I assume you don't think that it matters what their expert said and then what the expert said then got put into the amended complaint. Assume I were to read that. This is admittedly changing the language. Each of the paragraphs says, I don't remember his name. Dr. Keller. Dr. Keller said the following about what's not conventional and so on. Assume that I were to read that as just, with taking Dr. Keller out of it, just allegations that, and now just the same words about what was not unconventional. Why, in your view, would that not be enough for them to pass go on step two? Because, Your Honor, and the court said this, for example, it applied it in IBM Zillow. I think it also applied it in Trinity. The court has said if you have allegations that are wholly divorced from the patent specification itself, then you're not going to credit those on a motion to dismiss, and you can grant a motion to dismiss over it. Secured mail solutions is another case where I think that happened, Your Honors. And here, I think it's important to remember what the structure of this written description is. Columns one and two describe the background technology and state what the opportunity is. Starting at column three, we have the detailed description of what the invention is. And, Your Honors, there's no description starting in column three or anywhere else in the patent about how to create a web widget, about how to create a buy button, about how to do any of these things. There's no description whatsoever about any difficulty in getting a web widget onto any website or onto all websites. All there is in that portion of the detailed description is a description of what content you might want to include on your web widget. You might want to have a picture. You might want to have a product description. If it's a song, you might want to give a little sample of the song so people can listen to a portion of it. And then a description of what preexisting technologies you can use for your buy button, including Amazon, PayPal, and a variety of others that are identified in the patent. Your Honors, I don't think that these claims present a close call on subject matter eligibility. The patents are clearly directed to including a clickable buy button in an e-commerce store to facilitate payment, and that's exactly what's claimed, and it's all that's claimed. So unless Your Honors have any additional questions, I will be seated. Thank you, Your Honors. Mr. Springer has a minute left. I'll be quick, Your Honors. As you've heard from the arguments today and probably the briefs as well, so much of this case turns on conventionality. That's exactly the reason why it was the district court's responsibility to further develop these facts about conventionality. This is a clear and convincing evidence standard that the patent must be invalidated by. Where is the analysis in the court action? The court's entire analysis of 101 was less than four pages of a 14-page order. The rest of the order is just devoted to reciting legal standards in the background. That's one of our major points here, Your Honors, that at Rule 12, when facts are supposed to be construed in the favor of the complainant, it was the district court's responsibility to give some additional analysis here. Just as an example about the DDR case, it's a question of fact whether it was still conventional in 2010 at the time of the DKR patents as to whether that technical problem that was solved by DDR still existed. I see that my time has expired. Thank you, Counsel. Thank you, Your Honor. The case is submitted, and that concludes today's arguments. All rise.